UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

COREY P. BROWN
416 North Maple Street
Cadott, WI 54727

      Plaintiff,

vs.                                                                 Case No: 20-CV-0046

CHOICE PRODUCTS USA, LLC                      **JURY TRIAL DEMANDED**
3421 Truax Court
Eau Claire, WI 54703-6925

      Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, Corey Brown, by his counsel, HEINS EMPLOYMENT LAW PRACTICE LLC, by Attorney Janet L. Heins, as and for a claim against the Defendant, alleges and shows to the court:

### JURISDICTION AND VENUE

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 & 1337, as this case involves a federal question and arises under an Act of Congress regulating commerce, The Food Safety Modernization Act (FSMA), 21 U.S.C. § 399d, *et seq.*

2. The unlawful employment practices of which Plaintiff complains occurred within Chippewa County in the Western District of Wisconsin and venue is therefore proper in this District pursuant to 28 U.S.C. § 1331.

### THE PARTIES

3. The Plaintiff, Corey Brown, is an adult male resident of the State of Wisconsin

with a post office address of 416 North Maple Street, Cadott, WI 54727, located in Chippewa County.

4. The Defendant, Choice Products USA, LLC, was, at all times material herein, a domestic limited liability company doing substantial business in interstate commerce with a principal office address of 3421 Truax Court, Eau Claire, WI 54703-6925.

5. At all times material herein, Defendant manufactured food products at its Eau Claire facility for wholesale purchase by fundraisers within the meaning of Section 402 of the FDA Food Safety Modernization Act, as amended, 21 U.S.C. § 399d *et seq.*

## THE FACTS

6. Defendant employed Plaintiff as a Production Supervisor/Assistant Plant Manager at its Eau Claire manufacturing plant from September 2015 until his termination by Defendant on November 14, 2016.

7. Plaintiff received cash bonuses from Defendant's management for increased production at their food manufacturing facilities and an award at the company's banquet.

8. Plaintiff at all times material herein performed his job duties consistent with the Defendant's reasonable expectations.

9. On several occasions over the course of his employment, Plaintiff complained to Defendant's management specifically about unsafe and unsanitary conditions in the food manufacturing area of Defendant's facility.

10. Plaintiff complained to Defendant about management's attempts to force him to run the production line even after the facility had not had proper sanitation performed, including mold remediation, which would have caused food products to be contaminated.

11. Defendant's food production facilities often failed Listeria testing but Defendant's management told Plaintiff to run food production anyway; Plaintiff refused and

2

was reprimanded by Defendant's management.

12. While Defendant's client, Hampton Creek, had representatives present at Defendant's food production facility, Defendant's management told Plaintiff to falsify the ATP readings so they could run food production without doing the extra cleaning, but Plaintiff refused to do so.

13. Plaintiff complained to Defendant about management's attempts to force him to authorize the use of moldy butter and moldy peanut butter in manufacturing food products.

14. Plaintiff complained to Defendant's management about open food containers in its food production facilities, fruit flies all over the food products, larva crawling all over Defendant's Dry Mix line and equipment, and barrels of food product with bugs on and in them.

15. Plaintiff complained to Defendant's management that its facilities did not have proper storage for chemicals and that live power cords were disconnected and left unprotected near workers and other operational equipment.

16. On September 9, 2016, Plaintiff emailed Defendant's management about mold in the cooler on old peanut butter and on the walls of the cooler.

17. Plaintiff maintained checksheets for Defendant's food manufacturing facilities; those sheets dated September 9, 13, 27, and October 5, 18, 19, and 25, 2016, noted that the facilities continued to have sanitation problems.

18. On October 13, 2016, Plaintiff sent a message to Defendant's management about its sanitation crew being out of order and accusing Defendant of fostering a hostile work environment toward Plaintiff.

19. On October 19, 2016, a piece of Defendant's food production equipment sparked dangerously in the facility. Plaintiff had already notified Defendant's management that the

machine needed parts and repair. Defendant directed Plaintiff to run food production at the facilities anyway.

20. On October 19, 2016, after observing the unsafe spark of the machine, Plaintiff called OSHA to report these unsafe and unsanitary food manufacturing conditions at Defendant's facilities.

21. OSHA inspectors came to Defendant's facilities on October 26, 2016 to follow up on Plaintiff's complaint. That OSHA inspection resulted in fines against Defendant totaling nearly $100,000.

22. On October 26, 2016, after OSHA inspectors had arrived at Defendant's facilities for their inspection as a result of Plaintiff's complaint, Defendant's Human Resources representative Marilyn Hartung came to the computer, used by employees, to print off information about employees' downloads made from the public computer. Plaintiff had never seen Ms. Hartung visit the production facilities before that date.

23. Plaintiff observed Ms. Hartung print the information, and he made a copy for himself because he knew he was being targeted for retaliation. Plaintiff brought this printout to the attention of the OSHA inspector during the October 26, 2016 OSHA visit.

24. Defendant never reprimanded or disciplined Plaintiff for his authorized use of the public computer for any reason prior to his termination.

25. On November 7, 2016, Plaintiff emailed Defendant's management that two of his production employees had to go home early after throwing up in the control room, adding that it may be related to the use of fumigation chemicals at the facility. Plaintiff shut down production of food products on that date because conditions were unsanitary.

26. On November 11, 2016, Plaintiff complained via text message to Defendant's

4

management about being harassed because of his insisting on proper sanitation for food production at Defendant's facilities.

27. On occasions when sanitation failed safety standards for the production line, including August 1, 2016 and November 11, 2016, Plaintiff shut down the line rather than manufacture tainted food products.

28. Defendant claimed that it reprimanded Plaintiff for his "unauthorized" shutdown of the production line on August 1, 2016 and November 11, 2016, and Defendant included those alleged reprimands as justification of Plaintiff's termination.

29. Defendant terminated Plaintiff's employment on November 14, 2016.

30. At Plaintiff's unemployment compensation hearing after his termination, Ms. Hartung testified that she knew that Plaintiff was Defendant's employee who had called OSHA to investigate Defendant's facilities.

31. OSHA inspections of Defendant's food manufacturing facilities in 2019 after similar complaints resulted in fines against Defendant totaling $782,526, and also resulted in Defendant being included in the U.S. Department of Labor's Severe Violator Enforcement Program.

## ADMINISTRATIVE EXHAUSTION

32. On November 14, 2016, Plaintiff filed a whistleblower retaliation complaint under Section 11(c) of the Occupational Safety & Health Act, 29 U.S.C. § 660(c), designated as U.S. Department of Labor, Occupational Safety & Health Administration Case No. 5-1470-17-004.

33. Via letter dated February 5, 2018, OSHA advised Plaintiff that "during this investigation evidence was discovered indicating possible violations under The Food Safety

Modernization Act (FSMA), 21 U.S.C. § 399d. This complaint is hereby amended."

34. Plaintiff hereby exercises his right to file this lawsuit under OSHA's "kickout" provision, 21 U.S.C. § 399d(b)(4).

## CLAIM FOR RELIEF

35. Plaintiff engaged in protected activity under The Food Safety Modernization Act (FSMA), 21 U.S.C. § 399d, *et seq.* by complaining to Defendant's management and to OSHA about unsafe and unsanitary conditions in the food manufacturing area of Defendant's facility.

36. In response to Plaintiff's FSMA complaints, Defendant unlawfully retaliated against Plaintiff by issuing unwarranted discipline, by creating a hostile work environment for him, and by terminating him, in violation of FSMA.

37. As a direct, foreseeable, and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered injury and damages in the form of lost wages, lost employment benefits, loss of reputation in his industry, damage to his career, pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory and punitive damages, pre-judgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff his attorney fees, costs and disbursements as provided by 21 U.S.C. § 399d(b)(4), and all other applicable statutes and provisions; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

Dated this 17th day of January, 2020.

HEINS EMPLOYMENT LAW PRACTICE LLC
Counsel for the Plaintiff

*s/ Janet L. Heins* .
Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
200 South Executive Drive, Suite 101
Brookfield, WI 53005
(262) 241-8444 voice
e-mail: jheins@heinslawoffice.com