IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

COREY BROWN,

                Plaintiff,                  OPINION AND ORDER

    v.

                                    20-cv-046-wmc

CHOICE PRODUCTS, LLC,

                Defendant.

Plaintiff Corey Brown contends that he was terminated by his former employer defendant Choice Products, LLC, in retaliation for his complaints about food safety, in violation of the Food Safety Modernization Act, 21 U.S.C. § 399d.  Pending before the court is defendant's motion for summary judgment (dkt. #33), which will be denied because the court concludes that plaintiff has raised genuine issues of material fact as to: the timeliness of his administrative complaint; whether a causal nexus exists between his protected conduct and the termination of his employment; and whether defendant's proffered reason for his termination is pretextual.

UNDISPUTED FACTS[1]

**A. Brown's Employment with Choice**

Defendant Choice Products USA, LLC, hired plaintiff Corey B. Brown in September 2015 as a production supervisor / assistant plant manager, which included among his stated "essential duties" the reporting of both occupational and food safety issues.  Choice

---

[1] Unless otherwise noted, the following facts are material and undisputed when viewed in the light most favorable to plaintiff as the non-moving party.

operates fundraising programs for nonprofit organizations, facilitating the sale of candy and food products, some of which it manufactures.  Specifically, Choice operates two food production facilities, both located in Eau Claire, Wisconsin.  One produces bread products, while the other -- referred to as "the Bakery" -- produces cookie dough products.  In his dual role, Brown was responsible for overseeing Choice's production of food products at these facilities, as well as at two other production facilities, and the packaging and shipping of fundraising products.

Almost immediately after he started working for Choice, Brown began reporting equipment safety issues to either his supervisor Del Hasmuk or Choice management, often in the form of a daily checklist.  By May 2016, Brown had also started to report what he perceived to be food safety issues.

### B. Brown's Complaints to OSHA

On October 19, 2016, Brown took his concerns outside the company, calling the Occupational Safety and Health Administration ("OSHA") to report safety issues with a piece of modified machinery.[2]  As Brown explained at his deposition, the "final straw [that] broke the camel's back," and prompted his October 19 call was his witnessing a spark caused by what he believed to be faulty wiring, although it is not clear whether he conveyed any of his broader concerns during his call.  In OSHA's records of that call, two specific concerns about unsafe equipment were noted:  (1) "[c]onveyor in cookie dough facility has

---

[2] As context, Choice explains that it had adapted "certain equipment to meet the needs of a customer for 'ready-to-eat' products," and it initially struggled to meet the requirements relating to this product line.

unguarded sprocket, chain, and rotating shafts"; and (2) "[c]ookie dough mixer blade [is] not guarded."  (Naleid Decl., Ex. H (dkt. #39-8) 1.)  However, at his deposition, while Brown acknowledges that he complained about those two items, he also implied that other safety concerns were mentioned as well, although defendant failed to explore the specific food safety concerns Brown raised.  Moreover, in response to an interrogatory asking plaintiff to "[i]dentify which allegations in your Complaint were reported to OSHA and when each allegation was raised with OSHA," plaintiff represented that he "initially reported to OSHA the facts contained in paragraphs 7-10, 12-19, 24, 27 of the Complaint, and reported the remaining facts [paragraphs 11, 20, 22-23, 25-26, 28-30] to OSHA throughout [its] ensuing investigation of Defendant."  (Naleid Decl., Ex. N (dkt. #39-14) 3-4.)

Thus, plaintiff represents that he "initially" reported to OSHA on the October 19 call that:

> ¶ 9: On several occasions over the course of his employment, Plaintiff complained to Defendant's management specifically about unsafe and unsanitary conditions in the food manufacturing area of Defendant's facility.

> ¶ 10: Plaintiff complained to Defendant about management's attempts to force him to run the production line even after the facility had not had proper sanitation performed, including mold remediation, which would have caused food products to be contaminated.

> ¶ 12: While Defendant's client, Hampton Creek, had representatives present at Defendant's food production facility, Defendant's management told Plaintiff to falsify the ATP readings so they could run food production without doing the extra cleaning, but Plaintiff refused to do so.

3

¶ 13: Plaintiff complained to Defendant about management's attempts to force him to authorize the use of moldy butter and moldy peanut butter in manufacturing food products.

¶ 14: Plaintiff complained to Defendant's management about open food containers in its food production facilities, fruit flies all over the food products, larva crawling all over Defendant's Dry Mix line and equipment, and barrels of food product with bugs on and in them.

¶ 16: On September 9, 2016, Plaintiff emailed Defendant's management about mold in the cooler on old peanut butter and on the walls of the cooler.

¶ 17: Plaintiff maintained checksheets for Defendant's food manufacturing facilities; those sheets dated September 9, 13, 27, and October 5, 18, 19, and 25, 2016, noted that the facilities continued to have sanitation problems.

(Pl.'s Resp. to Def.'s PFOFs (dkt. #41) ¶ 45.)[3]

Regardless of the true scope of concerns raised during Brown's initial call on October 19, there is no dispute that it prompted OSHA to perform an inspection of Choice's Eau Claire facilities just one week later, on October 26, 2016. In response to that investigation, OSHA also issued several citations to the company on March 15, 2017, with possible fines totaling $65,188. (Wienkers Decl., Ex. A (dkt. #36-1).) Those citations all noted a lack of compliance with the Occupational Safety and Health Act (the "OSH Act"), but neither addressed any purported violations of the Food Safety Modernization Act ("FSMA") nor any other purported food safety violations. While plaintiff purports to dispute this by pointing out that all of the citations "referred to dough mixing and other food preparation

---

[3] Defendant argues that plaintiff never actually reported *food* safety issues to OSHA on the basis that: (1) plaintiff only offers "self-serving testimony" in support; and (2) as noted, OSHA's contemporary, written documentation does not corroborate his claimed scope of the complaints raised during the October 19th call. The court addresses this argument below.

in the production area used to make food products," there is *no* reference in the citations to any food safety concerns raised by plaintiff or otherwise noted.  (Pl.'s Resp. to Def.'s PFOFs (dkt. #41) ¶ 39.)  Indeed, as addressed below, food safety issues would generally fall outside of the scope of OSHA's enforcement powers.

### C. Plaintiff's Alleged Improper Computer Usage and Termination

At all times relevant to Brown's employment, Choice maintained an employee handbook, including a Computer/E-mail/Internet Usage policy.  Brown reviewed and acknowledged that employee handbook as part of his "onboarding process" at the outset of his employment, and he agreed to comply with it.  While defendant stops short of proposing any specific findings of facts regarding the provisions in that policy, it notes that "[i]n general, use of the company's technology systems and electronic communications should be job-related and not for personal convenience."  (Naleid Decl., Ex. C (dkt. #39-3) 4.)

During his employment with Choice, Brown was also enrolled as a student at Chippewa Valley Technical College in an "organizational leadership program."  The program classes that Brown took covered a variety of subjects, including sociology, psychology, language, culture and beliefs, institutional racism, intersectionality, economics, outsourcing of jobs, equal pay and utilitarian organizations.  In the Spring of 2016, he took five online classes; in the Fall of 2016, he took two classes.  Brown also testified at his deposition that he spent approximately eight hours a week in the Fall of 2016 on these two classes at home, during non-work hours.

5

In contrast, defendant's former Director of Human Resources, Marilyn Hartung, represents in her declaration, "On October 20, 2016, Choice was informed that Brown was spending a significant amount of time on homework assignments and checking his personal school accounts on Choice's [so-called "public"] computer during working hours in violation of Choice's Computer/E-mail/Internet Usage policy." (Hartung Decl. (dkt. #37) ¶ 2.) While plaintiff objects to a proposed finding based on this representation given its "passive phrasing," and an apparent lack of any personal knowledge as to the truth of the matter asserted, the phrasing of Hartung's declaration at least calls into question how Choice was informed, what prompted the information and on what it was based. Thus, at minimum, the reasonableness of Choice's claimed reliance on this information is in dispute. Plus, plaintiff affirmatively asserts that (1) the reported usage of this computer, which did not require login credentials, for school work was not attributable to him alone, representing that at least one other employee, Trent Heaviland, also attended Chippewa Valley; (2) his use was authorized by his supervisor, Del Hasmuk, who gave Brown permission to use the computer to check on his schoolwork, which was job-related; and (3) he "mainly" used the computer for schoolwork during downtime or while he was on a break. (Pl.'s Resp. to Def.'s PFOFs (dkt. #41) ¶ 30; Def's Reply to Def.'s PFOFs (dkt. #45) ¶ 37.)

Whatever the original source or accuracy of this information as to computer use, Hartung further represents that Choice's Director of Technology, Brad Shilts, was then asked to access the browser history and download folders from this computer. These records disclosed visits to websites, such as sociologydictionary.org and the Chippewa

Valley platform, and accessing of assignments and class materials, as well as searches relating to utilitarian organizations, the Lilly Ledbetter Fair Pay Act, outsourcing of jobs, and institutional racism. This more detailed examination led Choice to conclude that Brown was spending a "significant" amount of time each day at work researching and preparing homework assignments, as well as checking his personal school accounts.[4] Choice's then-HR Director Hartung further represents that on the same day that Brown's alleged use of the public computer was first discovered, October 20, 2016, Choice had already decided to terminate Brown's employment for violating the Computer/E-mail/Internet Usage policy.

Here, too, plaintiff takes issue with Hartung's declaration because of her use of the passive phrase: "Choice decided." Plaintiff also disputes that this was the genuine reason for the decision to terminate him, pointing out that the decision was made just one day after he complained to OSHA. However, defendant maintains that it was not aware of Brown's OSHA complaints on October 20, 2016, offering as support declarations by then-HR Director Hartung and Choice's Vice President of Product Development, Steve Wienkers, that "the company was not aware of any complaints that were filed with OSHA related to workplace safety until an OSHA inspection on October 26, 2016." (Hartung Decl. (dkt. #37) ¶ 7; *see also* Wienkers Decl. (dkt. #36) ¶ 14.) Choice also notes Brown's concession at his deposition that he had no personal knowledge that anyone at Choice had advanced notice of Brown's complaint or OSHA's coming to investigate before they

---

[4] Specifically, the Chippewa Valley website used by students to access assignments and class materials, edvance360.com, was accessed on the Choice computer 400 times from September 5 to November 3, 2016.

actually showed up on October 26, 2016.  (Brown Dep. (dkt. #40) 252.)[5]

Hartung further avers that sometime after the October 20 decision to terminate Brown's employment, she began drafting a termination memorandum, which she then sent to Richard and Glenn McHugh (neither of whom defendant identifies, but the court assumes are part of Choice's management team) on October 25, 2016, and that management intended to present the termination memo to Brown on October 28. (Hartung Decl. (dkt. #39) ¶ 5.)[6]  Defendant further represents that:  (1) it decided not to terminate Brown immediately on October 20 because of short-staffing and high production requirements; and (2) the subsequent OSHA investigation placed additional strain on Choice's staff.  As a result, Hartung represents that on October 28, Choice decided to delay Brown's termination because of his role in production and the potential adverse effect his termination would have on Choice's production requirements.

---

[5] Plaintiff attempts to dispute that Choice was not aware of his complaint until October 26 by pointing to the URL in a footer of an OSHA document dated October 19, but he offers no support for finding that this document means that *Choice* had access to it on that day, rather than just OSHA.  Indeed, with its reply brief, defendant proffered additional evidence that the document was provided by OSHA to Choice's counsel as a result of FOIA request on August 10, 2020 (Def.'s Add'l PFOFs (dkt. #46) ¶ 109), which, in turn, prompted a motion to strike by plaintiff (dkt. #51). The court need not delve into this additional evidence or motion to strike because plaintiff's original reliance on the URL does not by itself support a basis to reasonably infer that Choice had this document in its possession on October 19.  As such, the court declines to consider Choice's additional evidence offered in its reply and will deny as moot plaintiff's motion to strike.

[6] In its reply brief, defendant attempts to usher in metadata supporting Hartung's statement that she drafted and sent the termination memorandum to management on October 25.  (Def.'s Add'l PFOFs (dkt. #46) ¶ 110.)  In turn, plaintiff seeks to strike this new evidence, and the court agrees that defendant should have submitted it with its original proposed findings.  Regardless, plaintiff has no basis to challenge Hartung's representation that she drafted the termination letter on October 25, or, at least, before the OSHA investigation on the 26th.

Ultimately, Brown was terminated on November 14, 2016.  Wienkers, Hartung and Brown's supervisor Hasmuk were present at the termination, during which Brown accused Choice of terminating him "because of OSHA."  (Def.'s PFOFs (dkt. #35) ¶ 61 (quoting Brown Dep. (dkt. #40) 62-63).)  However, Choice informed him that he was actually being terminated for violating its computer policy by "doing school work on the company's computer and company time."  (*Id.* ¶ 62 (quoting Naleid Decl., Ex. E (dkt. #39-5).)  During that meeting, Brown also claimed that Hasmuk had told him that he could perform personal work on the computer, and when Hasmuk denied that he ever provided permission, Brown called him a liar.  Before that meeting, both Hartung and Wienkers also declare that they were not aware of Hasmuk having purportedly providing Brown with permission to use the computer.

### D. Administrative Process

On November 14, 2016, Brown filed a whistleblower retaliation complaint with OSHA under Section 11(c) of the OSH Act, 29 U.S.C. § 660(c).[7]  In that complaint, Brown claims he was "terminated for reporting the safety concerns to OSHA."  (Naleid Decl., Ex. G (dkt. #39-7).)  In that same complaint, Brown also represented that "[d]uring my employment [he] made numerous complaints to management about various safety concerns in daily reports but nothing was corrected."  (*Id.*)

---

[7] Although failing to explain its significance, plaintiff also points out that OSHA investigator Shawn Harrington drafted the original complaint, although there is no dispute that plaintiff signed it as his complaint.

On or about February 8, 2018, almost 15 months after his employment was terminated, Brown filed a second complaint with OSHA, this one detailing his complaints about *food* safety.[8]  (Naleid Decl., Ex. I (dkt. #39-9) 2-4.)  In the complaint, Brown notes concerns about: (1) failed listeria testing; (2) having to scrape mold off of food products, namely butter and peanut butter; (3) having to sort and throw away moldy bread; (4) deficient ATP testing;[9] (5) the presence of fruit flies; and (6) the presence of mold in the cooler.  After receipt, OSHA investigator Shawn Harrigan sent Brown's complaint to Choice's attorney, stating, "This letter is to advise you that during the investigation evidence was discovered by the office indicating possible violations under the Food Safety Modernization Act (FSMA), 21 U.S.C. §399d.  This complaint is hereby amended."  (*Id.* at 1.)  The letter went on to explain that OSHA is "responsible for enforcing the whistleblower provisions of FSMA, and will conduct its investigation following the procedures outlined in 29 CFR Part 1987."  (*Id.*)

Defendant contends now, and also argued during the administrative process, that plaintiff's food safety concerns were not raised in his original complaint, and thus, were now untimely.  OSHA acknowledged that the amended complaint was filed beyond the 180-day deadline but found that the amendment was "relevant" to the initial complaint

---

[8] Brown also called the Food and Drug Administration ("FDA") after his termination to complain about food safety issues, but was informed that the FDA could not act on his complaints because he was no longer an employee.  However, Choice represents, and Brown does not dispute, that it did not learn about this call until after Brown commenced the present lawsuit.

[9] "The ATP test is a process of rapidly measuring actively growing microorganisms through detection of adenosine triphosphate, or ATP."  "ATP Test," Wikipedia, https://en.wikipedia.org/wiki/ATP_test.

and, therefore, timely.

On January 17, 2020, Brown's counsel informed OSHA that he had elected to exercise his right to bring a *de novo* FSMA retaliation claim in federal court and, therefore, was withdrawing his Section 11(c) complaint. As a result of this election, OSHA then closed its investigation of both Brown's Section 11(c) and FSMA complaints, and this federal lawsuit followed.

## OPINION

As an initial matter, the court must clarify the claim plaintiff is pursuing in this lawsuit. While he originally filed an administrative complaint under the OSH Act for retaliation, he subsequently amended that complaint to assert a retaliation claim under the Food Safety Modernization Act ("FSMA"), 21 U.S.C. § 399d. Defendant contends that the second complaint was not a proper amendment and, therefore, challenges the timeliness of this second complaint, which is addressed below.

Even putting that challenge aside for a moment, the FSMA, unlike the OSH Act, provides that under certain conditions, an aggrieved individual may bring a *de novo* action in federal court. 21 U.S.C. § 399(d)(4)(A) (allowing a complainant to bring a *de novo* action in federal court if the Department of Labor has not issued a final decision within 210 days of filing the complaint). On the other hand, the OSH Act only authorizes: an aggrieved individual to pursue administrative relief, with a possible appeal to a Court of Appeals; or the Secretary of the Department of Labor to bring an action in district court. *See George v. Aztec Rental Ctr., Inc.*, 763 F.2d 184, 186 (5th Cir. 1985) ("[T]here is no private cause of action under federal law for a private employer's retaliatory discharge of an employee

contrary to section 11(c).”); *Luyon v. GTE, Inc.*, 107 F.3d 873 (7th Cir. 1997) (citing *George*, acknowledging that the retaliation provision in the OSH Act “does not create a private right of action”); 29 U.S.C. § 660(c)(2) (providing that the Secretary of the Department of Labor may bring actions in the United States district court for violations of this section).

With those clarifications, defendant raises three, principal reasons for the entry of summary judgment in its favor:   (1) the claim is barred because Brown’s FSMA administrative complaint was not filed within the required period; (2) Brown cannot demonstrate a causal nexus between his termination and any complaint to OSHA about food safety; and (3) plaintiff cannot rebut defendant’s evidence of a legitimate, nonretaliatory basis for his termination.   The court addresses each argument below.

## I.  Timeliness Challenge

The retaliation provision of the FSMA provides:

> A person who believes that he or she has been discharged or otherwise discriminated against by any person in violation of subsection (a) may, not later than 180 days after the date on which such violation occurs, file (or have any person file on his or her behalf) a complaint with the Secretary of Labor (referred to in this section as the “Secretary”) alleging such discharge or discrimination and identifying the person responsible for such act.

21 U.S.C.A. § 399d(b)(1).

There is no dispute that plaintiff filed his second administrative complaint with OSHA,[10] in which he describes complaints that he made about food safety to Choice

---

[10] While OSHA did not investigate or enforce Brown’s substantive complaints under the FSMA, as noted, it *is* tasked with enforcing the anti-retaliation or whistleblower provisions in a number of federal laws, including the FSMA.  *See* 29 C.F.R. pts. 24, 1977-1985, 1986.  The FDA is responsible

management over the course of his employment, more than 180 days after his termination. However, OSHA has a policy of allowing amendments to complaints outside of the statutory filing period *if* the amendment reasonably relates to the original complaint.  In other words, as this court explained in its opinion and order on defendant's motion to dismiss, there must be a "factual nexus" between the two complaints.  (2/26/21 Op. & Order (dkt. #21) 6.)  Moreover, while OSHA concluded that the second complaint was relevant to the initial filing, this court has an independent obligation to ensure that the second complaint reasonably relates to the first complaint or, at least, that there is a factual nexus between the two.  *See Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 575 (7th Cir. 1998) (reviewing the EEOC's acceptance of an amendment to the original charge of age discrimination to also allow assert a claim under the ADA).

When defendant raised this same argument in its motion to dismiss, the court concluded that on the pleadings, without the benefit of plaintiff's actual complaint to OSHA, plaintiff's initial administrative complaint -- asserting that he was terminated because he complained to OSHA about safety issues -- was general enough to cover his more specific amended complaint filed in February 2018 that he was retaliated against for complaining about food safety issues.  In that opinion, this court specifically noted that the original complaint to OSHA about "safety concerns," which it assumed at the time was in writing rather than oral, may belie a reasonable inference that the safety concerns were not limited to equipment safety but also encompassed food safety issues.

---

for investigating substantive violations of the Food Drug & Cosmetic Act ("FDCA"), which includes the FSMA.  21 U.S.C. §§ 374, 331.

At summary judgment, however, the court knows little more about Brown's communications with OSHA with regard to his safety concerns.  Again, the record reflects that Brown called OSHA on October 19 to express concerns about "safety."  While OSHA records note specific concerns about equipment, Brown testified that he also complained about food safety at that time or in subsequent conversations with OSHA before his termination.  As described in detail above, in answering an interrogatory about the substance of his complaint to OSHA, Brown also directed defendant to various paragraphs of his complaint representing food safety concerns he had raised during his initial and later communications with OSHA.

While Brown's evidence is open to dispute, the court concludes that he has at least raised a genuine issue of material fact as to whether and when he complained to OSHA about food safety issues.  Therefore, his initial OSHA retaliation complaint alleging that he was terminated because he complained to OSHA about safety concerns is sufficiently related to his subsequent FSMA retaliation complaint regarding the specific food safety concerns, as is his contention that he was terminated because of his having raised those concerns.[11]

The court further notes that the amended complaint describes *specific* food safety concerns that he raised with Choice management, rather than to OSHA.  Defendant argues that if plaintiff is allowed to proceed with his FSMA claim in this court, his protected

---

[11] Plaintiff did not move for summary judgment on a finding that his administrative complaint was timely; as such, the court need not determine at this time whether this element of his claim is satisfied.  Moreover, the parties do not address whether any remaining factual dispute would be for the court or a jury to revolve.  Thus, the court leaves these issues for another day.

conduct should be limited to the statements that he made to OSHA during the October 19 call or in subsequent conversations with OSHA before his termination.  However, defendant provides no legal support for this assertion.  In concluding that plaintiff has offered sufficient evidence of a factual nexus between his initial and amended administrative complaint, and that the second complaint reasonably relates to the original complaint, the court is aware of no basis, and defendant provides no support, for limiting Brown's protected conduct only to those statements he made to OSHA, if statements about food safety issues had previously been made directly to his employer.  *Cf. Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) (explaining that in the Prison Litigation Reform Act context, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought").

Indeed, there is no doubt that Brown's complaints directly to Choice management is protected conduct under the FSMA retaliation provision.  *See* 21 U.S.C.A. § 399d(a) (including complaints directly to the employer, as well as to the Federal Government, in the list of protected conduct).  Moreover, if one considers the purpose of the administrative process -- to provide both the administrative agency, as well as the employer, with an understanding of the nature of the complainant's claim and an opportunity to investigate and possibly reach an administrative resolution -- finding that Brown's protected conduct encompassed complaints he made *directly* to his employer rather than to OSHA does not appear to undermine that purpose.  *See Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (discussing purpose behind Title VII exhaustion requirement).  Perhaps, Brown will want to narrow his claim only to those statements made to OSHA to bolster

15

his evidence of causation, as discussed below, which seems principally tied to timing; however, from an exhaustion perspective, the court concludes Brown appears to have sufficiently exhausted an FSMA retaliation claim encompassing complaints made about food safety to Choice management directly or to OSHA.

Still, the court notes that because plaintiff's retaliation claim is premised on the substantive protections of the FSMA, plaintiff must prove that he was terminated *because* of complaints about food safety, *not* because of his complaints about equipment.  Indeed, the court will likely instruct the jury not to base its determination on Brown's complaints specific to *equipment* safety.  With the relevant claims in mind, the court next turns to defendant's second argument, challenging plaintiff's evidence of a causal nexus.

## II. Causation

Turning to the merits, the Seventh Circuit has yet to consider the elements of a retaliation claim under the FSMA; indeed, very few courts have considered such a claim to date.  However, the parties agree that the court should look to other, similar retaliation claims for guidance, including those arising under Title VII, the ADA and the ADEA.  To survive summary judgment, therefore, Brown "must present direct evidence that: (1) []he engaged in statutorily protected activity; (2) []he suffered an adverse employment action; and (3) there is a causal connection between the two."  *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004) (setting forth elements for Title VII retaliation claim).  At least for purposes of summary judgment, defendant does not challenge that plaintiff can prove the first two elements, but rather contends that plaintiff cannot demonstrate a causal connection between his complaint about food safety concerns and his termination.

16

Defendant's argument for summary judgment is premised on its position that plaintiff may only pursue his retaliation claim based on the statements he made to OSHA during the October 19 call.  As discussed above, however, the court rejects that framing of plaintiff's FSMA complaint.   Instead, as set forth in his February 2018 complaint discussing his specific food safety complaints, and consistent with his deposition testimony, plaintiff complained directly to defendant about food safety concerns beginning at least by May 2016, which apparently escalated in both frequency and seriousness in the month or so leading up to his termination.  As such, any argument that Choice was not aware of the substance of his October 19 complaint to OSHA until after it made the decision to terminate his employment, cannot serve as a basis for granting summary judgment in its favor.

Even if the court were to focus on the October 19 call to OSHA as the source of plaintiff's retaliation claim, the record demonstrates that Choice did not actually terminate Brown until approximately three weeks later, not only after that call, but after the subsequent OSHA investigation, thus permitting a reasonable jury to conclude that the termination occurred after Choice has full knowledge of Brown's involvement in the OSHA investigation.   Of course, defendant is free to maintain that it made the decision to terminate Brown before its awareness of his OSHA complaint, but that is dependent on a credibility determination that a jury must decide.  Moreover, even if the jury were to credit defendant's position that it made the decision to terminate Brown on October 20 based on his misuse of a work computer, or at least at some point before the October 26 OSHA investigation, the record is undeveloped as to what prompted Choice's investigation into

17

Brown's computer usage, and, therefore, the court cannot conclude that defendant's evidence *forecloses* a finding by the jury that Brown's call to OSHA the previous day (or his earlier complaints directly to management) had a causal connection to Choice's decision to terminate him. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (explaining that an alleged retaliatory act occurring within two or three days or right on the heels of protected conduct is sufficient to satisfy the third element of a retaliation claim). As such, the court rejects this basis for summary judgment as well. Finally, as described above, Brown will also have to demonstrate that it was the *food safety* complaints, rather than the equipment safety, prompting his termination. However, all of these questions are for a jury to decide on this record.

## III. Pretext

Finally, defendant contends that even if plaintiff can establish a *prima facie* case of retaliation, he cannot raise a genuine issue of fact as to defendant's legitimate, non-retaliatory basis for dismissal or otherwise establish that defendant's reason is pretextual. While it is not clear whether the FSMA retaliation provision contemplates a dual motive or burden-shifting framework, the parties appear to agree that defendant can rebut the *prima facie* case by articulating a legitimate, non-retaliatory reason for Brown's termination, and that the burden remains with Brown to demonstrate that the purported reason is a phony one. *See Kahn v. U.S. Sec'y of Lab.*, 64 F.3d 271, 278 (7th Cir. 1995), as modified (Sept. 7, 1995) (setting forth standard under the anti-retaliation provision of the Energy Reorganization Act).

18

As set forth above, Choice maintains that it terminated Brown's employment because he violated the company's Computer/E-mail/Internet Usage policy.  As already discussed, however, plaintiff has raised a genuine issues of material fact as to:  (1) whether he was given permission by his direct supervisor to use the computer during downtime or while he was on break to complete academic work for a degree related to his work at Choice; (2) whether he was singled out and treated differently than at least one other employee who also used the computer for academic purposes; and (3) whether termination was justified in light of the fact that this was his first disciplinary action.  Therefore, the court declines to grant summary judgment to defendant on this basis as well.

ORDER

IT IS ORDERED that:

1) Defendant Choice Products USA, LLC's motion for summary judgment (dkt. #33) is DENIED.

2) Plaintiff Corey P. Brown's motion to strike (dkt. #51) is DENIED AS MOOT.

Entered this 27th day of October, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

19